Means Unemployment Compensation Case.

Argued November 16, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*S. Harold Grossman,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

*Joseph E. Madva,* with him *Kenneth G. Jackson* and *Thorp, Reed & Armstrong,* for employer, intervenor, appellee.

OPINION BY GUNTHER, J., January 14, 1955:

This is an appeal from a decision of the Unemployment Compensation Board of Review denying compensation because of ineligibility under Section 402(b) of the Pennsylvania Unemployment Compensation Law. The facts are undisputed. Claimant began to work for the Elliott Company in November 1951 and continued until May 5, 1954. Her last working day was April 20, on which date she received two weeks' vacation pay and began her vacation on April 21. She was married April 24, 1954. At the end of her vacation period she was refused permission to return to work although willing and able. The refusal was based upon a company-union agreement which forbids the employment of married women. Claimant was a member of the United Steel Workers of America.

The Bureau originally decided that she was eligible upon the theory that the unemployment was involuntary in that she was required to resign because of the policy. The company appealed the decision and the referee reversed the Bureau disallowing benefits upon the following basis: "Since claimant was a member of the unit represented by the duly constituted bargaining agent of all the employees of the company, she was bound by an agreement made with respect to conditions of employment. Inasmuch as she was prevented from continuing in her employment because of marriage by virtue of the agreement entered into between the employer and the union, it is apparent that her unemployment was consensual and voluntary. She is, therefore, disqualified for benefits under Section 402(b) of the Law on the theory of delegated volition."

The clause requiring female employes to resign upon marriage was put into the contract between the company and the union and became effective on May 27, 1947, and provides as follows: "It is agreed by the

Company and the Union that insofar as it is practicable to do so in the employment of women, employment should be restricted to unmarried women . . . Any woman presently employed will be required to resign if she marries subsequent to May 27, 1947." The claimant contends that under §701 of the Law, no agreement of an employe to waive, release or commute any compensation right under the Act shall be valid.

Can a claimant be considered voluntarily unemployed if the company-union agreement provides that women employes must resign after marriage? The testimony definitely establishes that the union entered into an agreement with the company, on claimant's behalf, which provided for women presently employed to resign if married subsequent to May 27, 1947. The agreement was negotiated on behalf of claimant and all other members of the United Steel Workers of America. The claimant voiced no objections to the agreement during the course of her employment. It was testified by a representative of the company that claimant's employment was terminated after her marriage solely because of the contract between the company and her union.

The company had no choice in the matter but to dispense with claimant's services pursuant to the terms of the agreement. The referee, therefore, rightfully reversed the Bureau's decision and denied benefits under §402(b) because the evidence disclosed that claimant's unemployment was voluntary, since she was a member of the union and thus separated herself from employment by the action of her own delegated bargaining agent. The unemployment was the direct result of the contract negotiated by her own agreement. The agreement was binding upon claimant and all other employes. The purpose of the Unemployment Compensa-

tion Law is to provide relief from hardships of involuntary unemployment.

In *Barclay White Co. v. Unemp. Comp. Bd. of Review*, 356 Pa. 43, 50 A. 2d 336, the Supreme Court of Pennsylvania said that no one can properly question the fact that a worker who joins a union and abides by its regulations is within his rights in doing so but retention of membership therein is not a surrender to circumstances which will convert voluntary unemployment into involuntary unemployment under the Act. It was not merely her marriage that caused her to be out of work, but the agreement, and to hold otherwise would be to ignore the way in which unions function. This Court pointed out in the *Prentice Unemployment Compensation Case*, 161 Pa. Superior Ct. 630, 56 A. 2d 295, that a member of a union designates his union representatives to act for him as his agents in all matters pertaining to his employment, such as collective bargaining, and the Court further stated that a person cannot claim the advantages of his voluntary acts, in joining the union without at the same time assuming responsibility for their natural and probable consequence.

This same principle has been applied in the *Mattey Unemployment Compensation Case*, 164 Pa. Superior Ct. 36, 63 A. 2d 429. Although none of the cited cases involved a similar situation, nevertheless when the conduct of the claimant is inconsistent with the agreement, the application of the principles of the agency creates a voluntary separation from employment. The claimant is not entitled to receive compensation under §402(b) of the Act.

Decision affirmed.