YARRUT, Judge.
This is an appeal by the Administrator of the Louisiana Division of Employment Security, seeking a reversal of the judgment of the district court denying an airplane hostess unemployment compensation when she resigned, in keeping with the condition of her employment that she must do so if she should marry.
Under the controlling statutes (LSA-R.S. 23:1621 et seq) disputed claims for unemployment compensation are first heard by an Appeals Referee, with an appeal from him to a Board of Review, and from the latter to the district court of proper venue.
While the employee involved here is not a party to this judicial proceeding, LSA-R.S. 23:1634 authorizes the Administrator or any party to the proceeding before the Board of Review to petition for a judicial review.
The issue here is one of law, since the facts are not in dispute, viz:
Defendant-Appellee employed claimant for 18 months as an airline stewardess on the condition that, should she marry, she must resign her position. Upon her marriage claimant voluntarily resigned and applied for unemployment compensation, which was denied by the administrative agencies stated above, and the district court.
The Administrator, contrary to the position successfully established in similar cases decided by district courts, not appealed, now contends:
(1) That the employee had good cause to resign; and,
(2) That the requirement a stewardess must resign if she married is contrary to LSA-R.S. 23:1691, which provides, inter alia, that:
“No agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this Chapter shall be valid.”
The general rule is that employees who marry, and thereafter have resigned because of a company rule prohibiting continuation of employment after marriage, are held to have voluntarily quit their work without good cause, and are not eligible for unemployment compensation.
The cases of Czarnecki v. Unemployment Comp. Board of Review, 185 Pa.Super. 46, 137 A.2d 844 (1958); Elliott Co. v. Unem *247 ployment Comp. Board of Review, 180 Pa.Super. 542, 119 A.2d 650 (1956); Means v. Unemployment Comp. Board of Review, 177 Pa.Super. 410, 110 A.2d 886 (1955); Huiet v. Atlanta Gas Light Co., 70 Ga.App. 233, 28 S.E.2d 83 (1943), and Albertson & Co. v. Employment Security Commissioner, District Court, Iowa Blackhawk County, (Oct. 18, 1960) are uniformly to the effect that a company rule, whether promulgated unilaterally, or in a collective bargaining agreement, providing for the discharge of female employees upon marriage, is a reasonable and valid condition of employment, the enforcement of which does not create liability for unemployment compensation. In the Huiet case (supra), the Court said:
“The employee knowingly and voluntarily did the thing which would discontinue her relationship with the employer: She married. There was nothing involuntary about it. She further removed herself from her place of employment in such manner as to become unable to work and unavailable for work. She was not discharged and she did not resign; but she did leave work voluntarily. Thus the woman employee here is disqualified and ineligible to receive unemployment compensation under the provision of the* Georgia unemployment-compensation j act as amended.” 28 S.E.2d at 84.
The authorities cited and relied upon by the Administrator, concerning what constitutes “good cause” for an employee to resign and claim unemployment compensation, are distinguishable from this case:
Robertson v. Brown, La.App., 139 So.2d 226, is a case in which the claimant’s wages were reduced from $60 to $37.69 per week, although the claimant was employed for 14 years. The Court held the claimant had left his job for “good cause connected with his employment.”
In Turner v. Brown, La.App., 134 So.2d 384, an employee with eight years’ seniority was discharged for a single violation of a new rule of conduct which prohibited bringing food from her station in the kitchen to the lunch counter in front of her employer’s restaurant, which the Court held was not misconduct and allowed compensation.
In Friloux v. Administrator, La.App., 136 So.2d 99, and Flournoy v. Brown, La.App., 140 So.2d 729, the claimants were disqualified for having voluntarily quit their jobs. In Immel v. Brown, La.App., 143 So.2d 156, 159, the Court quoted from Corpus Juris Secundum:
“It is impossible to give a general definition of the words ‘good cause’ as used in statutes disqualifying individuals from claiming benefits where they failed to apply for or accept work or employment without good cause, and the meaning of the words must be determined in each case from the facts of that case. In any event, the phrase must be so interpreted that the fundamental purpose of the statute is not destroyed.” [81 C.J.S. Social Security and Public Welfare § 200, p. 295]
In Lacombe v. Sharp, La.App., 99 So.2d 387, the employer did not oppose, but rather favored, payment of unemployment compensation, in a case in which the employee had taken an indefinite leave of absence for “compelling” personal reasons and had been replaced before she was able to return to work.
Regarding the contention that this stipulation regarding “marriage” was contrary to LSA-R.S. 23:1691 (cited supra), the district judge properly stated in his reasons for judgment:
“ * * * this provision has no application to a valid, binding condition of employment. * * * The condition at issue is valid and based on sound policy. It is not an agreement to waive benefits, but is simply a condition of employment. The voluntary violation of a valid, legal condition of employment by the employee disqualified such employee from unemployment benefits.”
*248 In Bridges v. Cavalier Corporation, 212 Tenn. 237, 369 S.W.2d 548, 552, the Supreme Court of Tennessee said “[w]e do not think that this Section of the Code was intended by the Legislature to cover an action wherein the Union representative of the employees and the employer entered into a contract as they have herein.”
In Czarnecki v. Unemployment Comp. Board of Review, 185 Pa.Super. 46, 137 A.2d 844, 845 (1958), the Court held:
“It is argued on behalf of claimant that the provision in the collective bargaining agreement is illegal under section 701 of the law, 43 P.S. § 861. This section provides in part: ‘No agreement by an employe to waive, release, or commute his rights to compensation, or any other rights under this act, shall be valid.’ It is obvious that the section proscribes agreement to relinquish rights or benefits which the employe otherwise would be entitled to under the law. It has no application to legitimate conditions of the employment, such as the instant provision * * * which the employer and the employe (individually or through a collective bargaining agent) agree shall govern the employment status. The collective bargaining agreement was binding on claimant. When she married she thereby terminated her employment and voluntarily elected to place herself in an unemployed status for a reason which the law does not recognize as necessitious and compelling.”
We can see no difference between an employment contract negotiated through a collective bargaining agent, and an employment contract made directly between employer and employee.
The ban against married airline stewardesses is common to the industry. The duties required of a stewardess are such that, if she should become pregnant, she might endanger herself and her unborn child, as well as the passengers under her-care. An ill or disabled stewardess cannot, properly perform her duties during flight: which are essential to the comfort and safety of passengers. In times of emergency the stewardess is expected to take-the lead in saving lives; hence, she must be-in first-rate physical condition. She is likely to be called away from home for 48 hours at a time, and is always subject to permanent, transfer of station on very short notice. As a married hostess’ home is with her-husband, and is not as mobile as when she was unmarried, such a transfer might, jeopardize her marriage. Immobility of an airplane stewardess could seriously hamper-her employer’s ability properly to service its passengers and might endanger their-safety.
The judgment of the district court is-affirmed; costs to be borne or fixed bylaw.
Affirmed.