CARRIE LOU GUFFEY, Appellant,

*v.*

MRS. C. FRANK SCOTT, Commissioner of the Department of Employment Security, and Standard Knitting Mills, Inc., Appellees.

400 S.W.2d 705.

(*Knoxville,* September Term, 1965.)

Opinion filed March 2, 1966.

Ray E. Cate, Knoxville, for appellant.

W. L. Moore and W.D. Dodson, Nashville, for Mrs. C. Frank Scott, Commissioner, etc.

E. H. Rayson, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, for Standard Knitting Mills, Inc.

MR. JUSTICE WHITE delivered the opinion of the Court.

This case is before us from the decree of the chancellor affirming the decision of the Board of Review, Tennessee Department of Employment Security, which denied a claim for unemployment compensation filed by the appellant, Carrie Lou Guffey.

The appellant was employed for a number of years by Standard Knitting Mills, Inc., as a knitter. Her continuous employment period was from May 2, 1955 to February 28, 1964, when it was terminated because of pregnancy. Her baby was born on March 23, 1964. She was released for work by her doctor on May 1, 1964.

On June 23, 1964, she made application for re-employment with the Mills, but no opening was available to her at that time. On June 24, 1964, she filed her claim for unemployment compensation. The claim was denied on the ground that she had left her work voluntarily without good cause connected with her work within the meaning of T.C.A. sec. 50-1324, subd. A.

Her testimony before the Appeals Referee was that Standard Knitting Mills, Inc. had a rule that women could not work beyond their seventh month of pregnancy and that the nurse at the Mills complained because she thought Mrs. Guffey had violated this rule. The Appeals Referee, upon a full hearing, upheld the agency in its rejection of the claim filed by Mrs. Guffey for unemployment compensation. The Board of Review affirmed.

■■ Upon proper petition, the chancellor granted a writ of certiorari ordering that the case be transferred to his court for hearing. The defendants filed separate answers and the case was heard by the chancellor on February 17, 1965. On March 3, 1965, a final decree was entered denying benefits to the petitioner from which she perfected her appeal to this Court and has assigned the following errors:

1. The evidence preponderates against the finding of the court that appellant voluntarily quit her most recent employment without good cause connected with her work.

2. The court committed error in failing to determine whether an advanced stage of pregnancy constitutes a sickness or disability within the meaning of Section 50-1324 of the Tennessee Code Annotated.

3. The court erred in holding it was not necessary to determine whether an advanced pregnancy constitutes a sickness or disability within the meaning of the Tennessee Code Annotated 50-1324A.

In deciding this case we are required to construe the applicability of T.C.A. sec. 50-1324, which sets forth that an individual shall be disqualified for benefits of the Act if the Commissioner finds that he has left his most recent

work voluntarily without good cause connected with his work. No disqualification shall be made if such individual presents evidence supported by competent medical proof, that he was forced to leave his most recent work because he was sick or disabled and notified his employer of that fact as soon as it was reasonably practicable to do so, and returned to that employer and offered himself for work as soon as he was again able to work, and to perform his former duties.

The main burden of the appellant's contention set out in the first assignment of error is that Mrs. Guffey's unemployment was involuntary. The contention is that her unemployment resulted from the imposition of a company rule requiring withdrawal from employment upon the seventh month of pregnancy.

In the hearing before the Appeals Referee he made the following finding of fact:

Claimant, according to company policy, was not permitted to work after she had reached the seventh month of pregnancy, and since there was no fixed maternity leave policy, she was forced to resign her job on February 28, 1964.

When the claim was initially made for unemployment compensation, Mrs. Guffey stated:

I voluntarily quit due to pregnancy. My baby was born March 20, 1964 * * *. I went back to Standard on June 23, 1964 to try to get my job back, but they have no openings.

The Appeals Referee, in dismissing the claim, said:

Since the company for whom the claimant worked does not have a fixed maternity leave policy, and does not

guarantee a job after an individual is forced to leave their work due to pregnancy, the Appeals Tribunal must find that the claimant voluntarily left her most recent work without good cause connected with the work as contemplated by Section 50-1324A of the Code of Tennessee, and she should be held ineligible for benefits for the duration of her ensuing period of unemployment and until she has earned five times her weekly benefit amount in covered employment. The chancellor, in his final decree, held:

* * * there is * * * a reasonable basis in law to support the conclusion of the Board of Review in holding that the petitioner, because of her pregnancy, had voluntarily left her most recent employment without good cause connected with her work within the meaning of Section 50-1324A, Tennessee Code Annotated. The court is further of the opinion that the exception to the disqualification imposed by Section 50-1324A is not applicable, it appearing that the petitioner did not return to her employer and offer herself for work as soon as she was able to work and perform her duties following her pregnancy in that petitioner was able to work and perform her former duties on or about May 1, 1964 and failed to report to her former employer unil on or about June 23, 1964.

The chancellor found it unnecessary to consider and determine whether a condition of pregnancy constitutes an employee being "sick or disabled" within the meaning of said Code Section.

Under this particular Section, an individual who is forced to leave his work because of sickness or disability is not disqualified if he "returned to that employer and

offered himself for work as soon as he was again able to work, and to perform his former duties.''

■ In *Bailey v. Tennessee Department of Employment Security*, 212 Tenn. 422, 370 S.W.2d 492 (1963), at 427, there is set forth the scope of judicial review of the decision of the Board of Review, as provided for in T.C.A sec. 50-1325, subd. I i, viz.:

In any judicial proceeding under this section, the findings of the board of review as to the facts, if there be any evidence to support the same, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

The chancellor held that there was a reasonable basis in law to support the conclusion of the Board of Review in holding that the petitioner, because of her pregnancy, had voluntarily left her most recent employment without good cause connected with her work, within the meaning of Section 50-1324, subd. A.

■■ As indicated above, the court further held that Mrs. Guffey did not return to her employer and offer herself for work as soon as she was able to work and perform her duties following the birth of her child. Her doctor stated that she was able to work and perform her duties on or about May 1, 1964, but she did not report this fact to her former employer until on or about June 23, 1964. The court, based upon this evidence as presented to the Referee and the Board of Review, held that the exception to the disqualification imposed in said T.C.A. sec. 50-1324, subd. A to be not applicable. We agree with this conclusion. The section provides specifically that it is the duty of the employee to return to the employer and offer himself for work as soon as he is

able to work and perform his former duties. The evidence shows she was able to work and perform her duties for a period of more than seven weeks prior to her return to her employer to offer herself for work.

In a Georgia case, an employer advised a prospective employee that only single girls were employed and they remained employed only so long as they remained single. During a week's vacation one girl married, whereupon both she and the employer recognized that under the employer's rule the relationship of employer-employee was automatically dissolved by the marriage ceremony. Under these circumstances the employee was ruled disqualified and ineligible to receive unemployment compensation because she "voluntarily" violated the rule. *Huiet v. Atlanta Gas Light Co.*, 70 Ga.App. 233, 28 S.E. 2d 83 (1943).

In the present case Mrs. Guffey knew of the company rule that she was not permitted to work after the seventh month of pregnancy and, therefore, according to the statement given by her when she made application for unemployment compensation, she "voluntarily quit due to pregnancy." She, in fact, left her employment twenty-one days before the birth of her baby.

In going over the transcript of the hearing before the Appeals Referee, Joe F. O'Connor, we find that he made a brief statement of the history of the case and the purpose of the appeal to her and her attorney at the commencement of the hearing. He said that when Mrs. Guffey made application for benefits to the agency, there was a statement taken from her: "I voluntarily quit due to pregnancy." At the conclusion of this brief history of her case, her attorney, Mr. Cate, was permitted to question the claimant and he asked:

Q. And the record which Mr. O'Connor read, does that fairly reflect the statement you made at the time you applied for your benefits here?

A. Yes.

██ We believe that this is a complete answer to the plausible argument made in the brief filed on behalf of Mrs. Guffey that the two statements signed by her with the Department of Employment Security, containing the words she "voluntarily quit," represented nothing more than the interpretation applied to the statements of Mrs. Guffey as given to employees of the Department.

On this entire record we are firmly convinced that the chancellor was correct in affirming the action of the Board of Review for the reasons herein set out. Affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.